IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NOREEN S. ROBBINS, individually and on behalf of all others similarly situated,

Plaintiff and Proposed Class Representative,

v.

ALTIOR HEALTHCARE, LLC; NORTHUMBERLAND COUNTY; NORTHUMBERLAND COUNTY CHILDREN AND YOUTH SERVICES; JOHN DOES 1–25; ADMINISTRATIVE OFFICE OF PENNSYLVANIA COURTS; KYLIE AIKEY; AMERICAN BAR ASSOCIATION; BLOOMSBURG FAIR ASSOCIATION; MATTHEW W. BRANN; HEATH BROSIUS; BUCKNELL UNIVERSITY; JESSICA CHAPMAN; WILLIAM R. CHRISTMAN III; CIVIL PROCEDURAL RULES COMMITTEE OF THE SUPREME COURT OF PENNSYLVANIA; MARY BETH CLARK; CLINTON COUNTY BAR ASSOCIATION; COMMITTEE ON RULES OF PRACTICE AND PROCEDURE; COMMONWEALTH OF PENNSYLVANIA; MARK J. CONWAY; COURT OF JUDICIAL DISCIPLINE OF PENNSYLVANIA; MATTHEW CRAVITZ; ROBERT CRAVITZ; CRIMINAL PROCEDURAL RULES COMMITTEE OF THE SUPREME COURT OF PENNSYLVANIA; DISCIPLINARY BOARD OF THE SUPREME COURT OF PENNSYLVANIA; FEDERAL JUDICIAL CENTER; LORI R. HACKENBERG; INTERNATIONAL LEGAL AID GROUP; SEVENTEENTH JUDICIAL DISTRICT OF PENNSYLVANIA; JUDICIAL CONDUCT BOARD OF PENNSYLVANIA; JUDICIAL CONFERENCE OF THE UNITED STATES; HEATHER KELLY; BRIAN KERSTETTER; ROBERT LEADBETER; LEGAL SERVICES CORPORATION; KATHLEEN LINCOLN; LYCOMING LAW ASSOCIATION; KAROLINE MEHALCHICK; GABRIELE MILLER-WAGNER; LORI A. MOLLOY; NATIONAL CONFERENCE OF BAR EXAMINERS; JENNA ANN NEIDIG; NORTH PENN LEGAL SERVICES, INC.; NORTHUMBERLAND COUNTY PROTHONOTARY’S OFFICE; OFFICE OF DISCIPLINARY COUNSEL; OFFICE OF THE ATTORNEY GENERAL OF

PENNSYLVANIA; PENNSYLVANIA BAR ASSOCIATION; PENNSYLVANIA BOARD OF LAW EXAMINERS; PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES; PENNSYLVANIA DEPARTMENT OF MILITARY AND VETERANS AFFAIRS; PENNSYLVANIA GENERAL ASSEMBLY; PENNSYLVANIA LEGAL AID NETWORK, INC.; MICHAEL F. J. PIECUCH; JEFFREY A. ROWE; JAMIE SALESKI; ALEXANDRA SHOLLEY; MARSHA SKOFF; TIMOTHY SMITH; SNYDER COUNTY; SNYDER COUNTY STOP COALITION; SARAH STIGERWALT-EGAN; DAVID ANDREW STROUSE; K. MICHAEL SULLIVAN; SUPREME COURT OF PENNSYLVANIA; TRANSITIONS LEGAL CENTER; TRANSITIONS OF PA; DAVID K. TREVASKIS; BRIAN ULMER; UNION COUNTY; UNION COUNTY CRIMINAL JUSTICE ADVISORY BOARD; UNION COUNTY MENTAL HEALTH ADVISORY COMMITTEE; UNION COUNTY STOP COALITION; UNION–SNYDER COUNTY BAR ASSOCIATION; UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA; UNITED STATES CONGRESS; UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA; RACHEL WIEST-BENNER; JENNIFER P. WILSON; SNYDER COUNTY CHILDREN AND YOUTH SERVICES; THE RIDGE RTC (MAINE); RUSSELL W. ROBBINS; GREGORY A. STUCK,

Defendants.

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

## I. NATURE OF THE ACTION

1. The Founding Fathers created a system that prohibited fact-pleading.
2. Every litigant who files a Complaint and lists the required elements is entitled to a jury trial, regardless of the plausibility of facts.

3. Courts never had the authority to limit the jury trial right, because they are the most biased people on the planet with regard to whether judges can deny jury trials, and have no more competence than lay people.
4. If the Courts had not unilaterally amended the Constitution, the Complaint herein, which covers more than 500 causes of action in 50 pages, would have been more than sufficient.
5. Robbins pleads each element of the causes of action against the defendants assigned to that cause and demands a jury trial on all disputed facts.
6. Robbins seeks reinstatement of the common-law demurrer standard, suspension of fact-pleading requirements that deny jury consideration of element-sufficient claims, and trial by jury.
7. In the alternative, Robbins requests leave to file the ten complete complaints attached as Exhibits A through J separately, together with any additional complaints the Court severs.
8. When undersigned counsel was employed by Judge Matthew Brann at the Middle District of Pennsylvania, from 2014 through 2017, she regularly dined with him, and he regularly told her that he had concocted a “scheme” to combine Rule 8 with Rule 12 to limit the number of nonfrivolous claims a litigant could bring in is his Court.
9. The Middle District has executed this scheme, by dismissing appropriate claims brought by undersigned counsel.
10. It is tyranny to limit the number of nonfrivolous claims a litigant can bring.
11. It is tyranny to assert that claims are frivolous without undertaking any analysis whatsoever.
12. Plaintiff requests that this Court refrain from following the Middle District of Pennsylvania, and instead follow the guidance of Courts from Michigan, in handling similar issues.

13. Plaintiff should be allowed to proceed on a fifty-page complaint, if the Court is going to complaint that 500 pages would be too long, or to proceed on the 500-page complaint, if the Court is going to complain that the causes of action lack sufficient detail or factual support. The Court should not be allowed to combine Rule 8 and Rule 12 to limit the number of nonfrivolous claims Plaintiff can bring.

## II. JURISDICTION AND VENUE

14. This Court has federal-question jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1343.

15. This Court has supplemental jurisdiction over related Pennsylvania and Maine claims under 28 U.S.C. § 1367(a).

16. Robbins seeks declaratory relief under 28 U.S.C. §§ 2201–2202.

17. On May 27, 2026, Robbins met B.R. for approximately one hour at Belmont Behavioral Hospital in Philadelphia, Pennsylvania.

18. The related custody proceedings occurred in Snyder County, Pennsylvania, and the contested residential placements occurred in Maine.

## III. PARTIES

19. Plaintiff NOREEN S. ROBBINS is a Pennsylvania resident and the mother of B.R., E.R., and O.R., suing individually and as proposed class representative.

20. Defendant ALTIOR HEALTHCARE, LLC is a private adolescent behavioral-health treatment company associated with the Ridge treatment network, with business offices at 12424 Wilshire Boulevard, Suite 800, Los Angeles, California 90025.

21. Defendant NORTHUMBERLAND COUNTY is a Pennsylvania political subdivision with governmental offices at 201 Market Street, Sunbury, Pennsylvania 17801.

22. Defendant NORTHUMBERLAND COUNTY CHILDREN AND YOUTH SERVICES is the county child-protection and family-services agency with offices at 322 North Second Street, Sunbury, Pennsylvania 17801.

23. Defendant JOHN DOES 1–25 are presently unidentified individuals or entities alleged to have participated in the communications, custody arrangements, public-service restrictions, or legal-service decisions described in Exhibits A through J; Robbins will identify and serve them through authorized procedures after discovery.
24. Defendant ADMINISTRATIVE OFFICE OF PENNSYLVANIA COURTS is an administrative office of the Pennsylvania judiciary headquartered at the Pennsylvania Judicial Center, 601 Commonwealth Avenue, Harrisburg, Pennsylvania 17120, with responsibility for statewide court administration.
25. Defendant KYLIE AIKEY is a Pennsylvania attorney and divorce master who participated in Robbins's Snyder County divorce proceeding and is sued individually, with correspondence through the Snyder County Courthouse, 9 West Market Street, Middleburg, Pennsylvania 17842.
26. Defendant AMERICAN BAR ASSOCIATION is a national voluntary professional association headquartered at 321 North Clark Street, Chicago, Illinois 60654, and participates in law-school accreditation and professional-standards activities.
27. Defendant BLOOMSBURG FAIR ASSOCIATION is a Pennsylvania fair and public-event organization located at 620 West Third Street, Bloomsburg, Pennsylvania 17815, that controls access to event and outreach activities.
28. Defendant MATTHEW W. BRANN is a United States District Judge of the Middle District of Pennsylvania, sued in his individual and official capacities, with judicial offices at 240 West Third Street, Williamsport, Pennsylvania 17701.
29. Defendant HEATH BROSIUS is the Snyder County District Attorney and a participant in county victim-service coordination, sued individually and officially, with offices at 9 West Market Street, Middleburg, Pennsylvania 17842.
30. Defendant BUCKNELL UNIVERSITY is a private university headquartered at One Dent Drive, Lewisburg, Pennsylvania 17837, that participates in student work-study, community partnerships, and legal-service volunteer projects.

31. Defendant JESSICA CHAPMAN participated in Pennsylvania Bar Association and veterans legal-service communications and is sued individually, with correspondence care of Pennsylvania Bar Association, 100 South Street, Harrisburg, Pennsylvania 17101.
32. Defendant WILLIAM R. CHRISTMAN III is Pennsylvania Bar Association general counsel who issued the July 30, 2025 program communications restrictions, sued individually, with professional correspondence at the Pennsylvania Bar Association, 100 South Street, Harrisburg, Pennsylvania 17101.
33. Defendant CIVIL PROCEDURAL RULES COMMITTEE OF THE SUPREME COURT OF PENNSYLVANIA is the state judicial committee associated with civil procedural rulemaking, located through the Pennsylvania Judicial Center, 601 Commonwealth Avenue, Harrisburg, Pennsylvania 17120.
34. Defendant MARY BETH CLARK is a Pennsylvania attorney associated with North Penn Legal Services and county bar governance, sued individually, with correspondence care of North Penn Legal Services, 100 South Main Street, Wilkes-Barre, Pennsylvania 18701.
35. Defendant CLINTON COUNTY BAR ASSOCIATION is a voluntary bar association in Clinton County, Pennsylvania, with local correspondence through the Clinton County Courthouse, 230 East Water Street, Lock Haven, Pennsylvania 17745.
36. Defendant COMMITTEE ON RULES OF PRACTICE AND PROCEDURE is the federal judicial rulemaking advisory committee operating through the Administrative Office of the United States Courts, One Columbus Circle NE, Washington, DC 20544.
37. Defendant COMMONWEALTH OF PENNSYLVANIA is the sovereign Commonwealth government with central administrative offices at the Pennsylvania State Capitol, Harrisburg, Pennsylvania 17120.

38. Defendant MARK J. CONWAY is a United States Bankruptcy Judge in the Middle District of Pennsylvania, with chambers at the Max Rosenn United States Courthouse, 197 South Main Street, Wilkes-Barre, Pennsylvania 18701; he is sued individually and officially.

39. Defendant COURT OF JUDICIAL DISCIPLINE OF PENNSYLVANIA is a Pennsylvania constitutional judicial-discipline tribunal reachable through the Pennsylvania Judicial Center, 601 Commonwealth Avenue, Harrisburg, Pennsylvania 17120.

40. Defendant MATTHEW CRAVITZ is a Pennsylvania attorney associated with landlord-tenant practice and legal education, sued individually, with correspondence care of Lycoming Law Association, 25 West Third Street, Williamsport, Pennsylvania 17701.

41. Defendant ROBERT CRAVITZ is a Pennsylvania attorney associated with regional landlord-tenant practice and legal education, sued individually, with professional correspondence through the Lycoming Law Association, 25 West Third Street, Suite 803, Williamsport, Pennsylvania 17701.

42. Defendant CRIMINAL PROCEDURAL RULES COMMITTEE OF THE SUPREME COURT OF PENNSYLVANIA is the state judicial committee associated with criminal procedural rulemaking, reachable through the Pennsylvania Judicial Center, 601 Commonwealth Avenue, Harrisburg, Pennsylvania 17120.

43. Defendant DISCIPLINARY BOARD OF THE SUPREME COURT OF PENNSYLVANIA is the Pennsylvania judicial agency administering attorney discipline, with offices at 601 Commonwealth Avenue, Suite 5600, Harrisburg, Pennsylvania 17120.

44. Defendant FEDERAL JUDICIAL CENTER is a federal judicial education and research organization located at the Thurgood Marshall Federal Judiciary Building, One Columbus Circle NE, Washington, DC 20002.

45. Defendant LORI R. HACKENBERG is a judge of the Seventeenth Judicial District of Pennsylvania, sued individually and officially, with judicial offices at the Union County Courthouse, 103 South Second Street, Lewisburg, Pennsylvania 17837.

46. Defendant INTERNATIONAL LEGAL AID GROUP is a Scottish charitable legal-aid research and policy organization with a registered contact address at Mountmill, Oxton, Scottish Borders TD2 6PT, United Kingdom.

47. Defendant SEVENTEENTH JUDICIAL DISTRICT OF PENNSYLVANIA is the Pennsylvania judicial district comprising Union and Snyder Counties, with court administration at the Snyder County Courthouse, 9 West Market Street, Middleburg, Pennsylvania 17842.

48. Defendant JUDICIAL CONDUCT BOARD OF PENNSYLVANIA is a Pennsylvania constitutional judicial-misconduct investigation body, with mailing address P.O. Box 62525, Harrisburg, Pennsylvania 17106.

49. Defendant JUDICIAL CONFERENCE OF THE UNITED STATES is the national policymaking body for the federal judiciary, administered through the Administrative Office of the United States Courts, One Columbus Circle NE, Washington, DC 20544.

50. Defendant HEATHER KELLY is an individual associated with North Penn Legal Services and legal-service program communications, sued individually, with correspondence care of North Penn Legal Services, 100 South Main Street, Wilkes-Barre, Pennsylvania 18701.

51. Defendant BRIAN KERSTETTER is a Pennsylvania prosecutorial and county victim-service participant associated with Union County STOP referrals, sued individually, with professional correspondence through the Union County Courthouse, 103 South Second Street, Lewisburg, Pennsylvania 17837.

52. Defendant ROBERT LEADBETER is a Pennsylvania state legislator whose official office may be reached through the Pennsylvania House of Representatives,

Main Capitol Building, Harrisburg, Pennsylvania 17120; he is sued individually and officially.

53. Defendant LEGAL SERVICES CORPORATION is a federally established nonprofit corporation administering civil legal-aid funding and oversight, with offices at 3333 K Street NW, Washington, DC 20007.

54. Defendant KATHLEEN LINCOLN is a Pennsylvania attorney who represented Robbins in custody and divorce proceedings and is sued individually, with correspondence through the Snyder County Courthouse, 9 West Market Street, Middleburg, Pennsylvania 17842.

55. Defendant LYCOMING LAW ASSOCIATION is a Pennsylvania legal professional association with offices at 25 West Third Street, Suite 803, Williamsport, Pennsylvania 17701.

56. Defendant KAROLINE MEHALCHICK is a United States District Judge for the Middle District of Pennsylvania, sued individually and officially, with judicial correspondence through the United States Courthouse, 235 North Washington Avenue, Scranton, Pennsylvania 18503.

57. Defendant GABRIELE MILLER-WAGNER participated in Pennsylvania Bar Association Wills for Heroes communications and is sued individually, with correspondence care of Pennsylvania Bar Association, 100 South Street, Harrisburg, Pennsylvania 17101.

58. Defendant LORI A. MOLLOY is a North Penn Legal Services administrator associated with civil legal-aid supervision and continuity of representation, sued individually, with professional correspondence through North Penn Legal Services, 100 South Main Street, Wilkes-Barre, Pennsylvania 18701.

59. Defendant NATIONAL CONFERENCE OF BAR EXAMINERS is a nonprofit organization that develops admission examinations and assessments, with offices at 302 South Bedford Street, Madison, Wisconsin 53703.

60. Defendant JENNA ANN NEIDIG is a Pennsylvania attorney and Union–Snyder County Bar Association secretary, sued individually, with correspondence care of that association, P.O. Box 328, Middleburg, Pennsylvania 17842.

61. Defendant NORTH PENN LEGAL SERVICES, INC. is a Pennsylvania nonprofit provider of civil legal assistance with administrative offices including 100 South Main Street, Wilkes-Barre, Pennsylvania 18701, and regional offices serving north-central Pennsylvania.

62. Defendant NORTHUMBERLAND COUNTY PROTHONOTARY'S OFFICE is a Northumberland County court-records and civil-filing office located at 201 Market Street, Sunbury, Pennsylvania 17801.

63. Defendant OFFICE OF DISCIPLINARY COUNSEL is Pennsylvania's attorney-disciplinary enforcement office, with offices at 601 Commonwealth Avenue, Harrisburg, Pennsylvania 17120.

64. Defendant OFFICE OF THE ATTORNEY GENERAL OF PENNSYLVANIA is a Pennsylvania state executive agency with its central offices at Strawberry Square, Harrisburg, Pennsylvania 17120, responsible for state legal representation and statutory duties.

65. Defendant PENNSYLVANIA BAR ASSOCIATION is a Pennsylvania statewide voluntary bar association with offices at 100 South Street, Harrisburg, Pennsylvania 17101, administering pro bono and Wills for Heroes-related programs.

66. Defendant PENNSYLVANIA BOARD OF LAW EXAMINERS is an agency of the Supreme Court of Pennsylvania administering lawyer admission and examination, located at 601 Commonwealth Avenue, Suite 3600, Harrisburg, Pennsylvania 17120.

67. Defendant PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES is Pennsylvania's executive agency for human services and child-welfare program oversight, headquartered at 625 Forster Street, Harrisburg, Pennsylvania 17120.

68. Defendant PENNSYLVANIA DEPARTMENT OF MILITARY AND VETERANS AFFAIRS is a Pennsylvania executive agency providing veterans services, with official offices at Building 0-47, Fort Indiantown Gap, Annville, Pennsylvania 17003.

69. Defendant PENNSYLVANIA GENERAL ASSEMBLY is the Commonwealth's legislative branch, headquartered at the Pennsylvania State Capitol, Harrisburg, Pennsylvania 17120.

70. Defendant PENNSYLVANIA LEGAL AID NETWORK, INC. is a statewide nonprofit legal-aid funding and coordination organization with offices at 118 Locust Street, Harrisburg, Pennsylvania 17101.

71. Defendant MICHAEL F. J. PIECUCH is a judge of the Seventeenth Judicial District of Pennsylvania, sued individually and officially, with judicial offices at the Snyder County Courthouse, 9 West Market Street, Middleburg, Pennsylvania 17842.

72. Defendant JEFFREY A. ROWE is a judicial officer of the Seventeenth Judicial District of Pennsylvania, sued individually and officially, with judicial correspondence at the Union County Courthouse, 103 South Second Street, Lewisburg, Pennsylvania 17837.

73. Defendant JAMIE SALESKI is the Northumberland County Prothonotary, whose official office is located at 201 Market Street, Sunbury, Pennsylvania 17801; she is sued individually and officially.

74. Defendant ALEXANDRA SHOLLEY is a Pennsylvania attorney associated with Union–Snyder County Bar Association governance and is sued individually, with correspondence care of that association, P.O. Box 328, Middleburg, Pennsylvania 17842.

75. Defendant MARSHA SKOFF is an individual involved in Pennsylvania court-administration and attorney-appearance matters, sued individually, with

correspondence through the Snyder County Courthouse, 9 West Market Street, Middleburg, Pennsylvania 17842.

76. Defendant TIMOTHY SMITH is an individual associated with North Penn Legal Services administration and is sued individually, with correspondence care of North Penn Legal Services, 100 South Main Street, Wilkes-Barre, Pennsylvania 18701.

77. Defendant SNYDER COUNTY is a Pennsylvania political subdivision with government offices at 9 West Market Street, Middleburg, Pennsylvania 17842.

78. Defendant SNYDER COUNTY STOP COALITION is a Snyder County victim-services coordination group, with local correspondence through the Snyder County Courthouse, 9 West Market Street, Middleburg, Pennsylvania 17842.

79. Defendant SARAH STIGERWALT-EGAN is a Pennsylvania attorney and Union–Snyder County Bar Association officer, sued individually, with correspondence care of that association, P.O. Box 328, Middleburg, Pennsylvania 17842.

80. Defendant DAVID ANDREW STROUSE is a Pennsylvania attorney associated with pro bono and veterans programs, sued individually, with correspondence through the Clinton County Courthouse, 230 East Water Street, Lock Haven, Pennsylvania 17745.

81. Defendant K. MICHAEL SULLIVAN is a Pennsylvania attorney involved in Union–Snyder County Bar Association leadership and Wills for Heroes planning, sued individually, with correspondence care of that association, P.O. Box 328, Middleburg, Pennsylvania 17842.

82. Defendant SUPREME COURT OF PENNSYLVANIA is Pennsylvania's court of last resort, headquartered at the Pennsylvania Judicial Center, 601 Commonwealth Avenue, Harrisburg, Pennsylvania 17120, with statewide rulemaking and attorney-regulation responsibilities.

83. Defendant TRANSITIONS LEGAL CENTER provides civil legal assistance associated with Transitions of PA, with correspondence at 120 South Third Street, Lewisburg, Pennsylvania 17837.

84. Defendant TRANSITIONS OF PA is a Pennsylvania victim-services nonprofit serving Union, Snyder, and Northumberland Counties, with offices at 120 South Third Street, Lewisburg, Pennsylvania 17837.

85. Defendant DAVID K. TREVASKIS is a Pennsylvania attorney associated with statewide pro bono and veterans legal programs, sued individually, with correspondence care of Pennsylvania Bar Association, 100 South Street, Harrisburg, Pennsylvania 17101.

86. Defendant BRIAN ULMER is the attorney guardian ad litem in Robbins's custody case and a county bar participant, sued individually, with correspondence through the Snyder County Courthouse, 9 West Market Street, Middleburg, Pennsylvania 17842.

87. Defendant UNION COUNTY is a Pennsylvania political subdivision with county offices at 103 South Second Street, Lewisburg, Pennsylvania 17837.

88. Defendant UNION COUNTY CRIMINAL JUSTICE ADVISORY BOARD is a county justice-system coordinating body with correspondence through Union County government offices, 103 South Second Street, Lewisburg, Pennsylvania 17837.

89. Defendant UNION COUNTY MENTAL HEALTH ADVISORY COMMITTEE is a county behavioral-health advisory body with correspondence through Union County government offices, 103 South Second Street, Lewisburg, Pennsylvania 17837.

90. Defendant UNION COUNTY STOP COALITION is a Union County victim-service coordination group with correspondence through Union County government offices, 103 South Second Street, Lewisburg, Pennsylvania 17837.

91. Defendant UNION–SNYDER COUNTY BAR ASSOCIATION is a voluntary Pennsylvania county bar association that manages local professional activities and pro bono programs, with a mailing address at P.O. Box 328, Middleburg, Pennsylvania 17842.

92. Defendant UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA is a federal bankruptcy court within the Middle District of Pennsylvania, with district court facilities including the Max Rosenn United States Courthouse, 197 South Main Street, Wilkes-Barre, Pennsylvania 18701.
93. Defendant UNITED STATES CONGRESS is the national legislative branch, which meets at the United States Capitol, Washington, DC 20510.
94. Defendant UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT is the federal appellate court headquartered at the James A. Byrne United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania 19106.
95. Defendant UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES is a federal executive agency administering national health and human services programs, headquartered at 200 Independence Avenue SW, Washington, DC 20201.
96. Defendant UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA is a federal trial court with facilities at 235 North Washington Avenue, Scranton, Pennsylvania 18503.
97. Defendant RACHEL WIEST-BENNER is a Pennsylvania magisterial district judge associated with an attorney-appearance dispute, sued individually and officially, with correspondence through the Lycoming County Courthouse, 48 West Third Street, Williamsport, Pennsylvania 17701.
98. Defendant JENNIFER P. WILSON is a United States District Judge for the Middle District of Pennsylvania, sued individually and officially, with judicial correspondence through the United States Courthouse, 235 North Washington Avenue, Scranton, Pennsylvania 18503.
99. Defendant SNYDER COUNTY CHILDREN AND YOUTH SERVICES is the Snyder County child-welfare agency with offices at 713 Bridge Street, Suite 15, Selinsgrove, Pennsylvania 17870.

100. Defendant THE RIDGE RTC (MAINE) is a private adolescent residential-treatment facility with an operating campus at 67 Captain Cushman Road, Morrill, Maine 04952.

101. Defendant RUSSELL W. ROBBINS is a Pennsylvania resident and the father of B.R., E.R., and O.R., sued individually in connection with Snyder County custody case CV-0171-2017.

102. Defendant GREGORY A. STUCK is the attorney who represented interests adverse to Robbins in the custody and treatment disputes, sued individually, with correspondence through the Snyder County Courthouse, 9 West Market Street, Middleburg, Pennsylvania 17842.

## IV. COMMON FACTUAL ALLEGATIONS

103. Snyder County docket CV-0171-2017 concerns custody of Robbins's three children, and docket CV-0172-2017 concerns the related divorce and marital-property dispute.

104. Robbins retained Lincoln to prepare her custody and divorce matters and to protect her interests in parenting time, children's records, and disputed marital assets.

105. Robbins requested investigation and subpoenas concerning more than $100,000 allegedly withdrawn by Russell from a joint account before the divorce issues reached resolution.

106. On May 28, 2025, Lincoln told Paige Martineau that continued local bar membership, committee leadership, and professional friendships depended upon not suing lawyers for malpractice.

107. On July 30, 2025, Pennsylvania Bar Association general counsel William R. Christman III barred Martineau and Susquehanna Legal Aid for Adults and Youth from statewide Wills for Heroes activity and required communications with program personnel to pass through him.

108. On October 20, 2025, Lincoln sought permission to withdraw before the November 12 custody hearing while Robbins still needed preparation and legal assistance.

109. Robbins opposed withdrawal on November 5, 2025 and requested a continuance on November 10, 2025 because she lacked an adequate opportunity to prepare for the hearing without counsel.

110. On November 12, 2025, the custody court allowed Lincoln to withdraw, denied the continuance, and proceeded with the contested hearing without her retained counsel.

111. After Robbins notified Lincoln and Ulmer of contemplated malpractice claims, Lincoln, Ulmer, Alexandra Sholley, and Sarah Stigerwalt-Egan participated in the Union–Snyder County Bar Association action against Martineau.

112. On November 18, 2025, the Union–Snyder County Bar Association issued an unsigned notice suspending Martineau’s membership and excluding her from bar communications and activities.

113. On November 24, 2025, the custody court awarded Russell sole legal custody and altered Robbins’s physical custody arrangements concerning B.R.

114. Robbins sought appellate review and obtained representation from Martineau and Susquehanna Legal Aid for Adults and Youth for custody enforcement, disputed treatment placements, family records, and appeals.

115. On February 17, 2026, Kylie Aikey refused a requested postponement of a divorce hearing after Martineau received same-day preoperative medical instructions.

116. At 7:04 a.m. that day Aikey characterized the circumstances as insufficient for a continuance, and at 8:49 a.m. Martineau notified counsel of additional directives from her surgeon’s office.

117. On May 27, 2026, Robbins obtained one hour of contact with B.R. at Belmont Behavioral Hospital in Philadelphia during the dispute over psychiatric treatment and parental access.

118. On June 1, 2026, Martineau requested B.R.'s location and the facility's identity from Russell, Stuck, and Ulmer.

119. On June 2, 2026, Stuck acknowledged Robbins's right to know the child's location while disputing her right to participate in the treatment decision.

120. On June 11, 2026, Martineau pressed Ulmer to investigate medical, educational, and residential placement records, and Ulmer told counsel to get the records herself and called her lazy.

121. Russell arranged residential placement for B.R. at The Ridge RTC in Maine, while Robbins challenged his authority to arrange treatment without her consent and sought admission documents, records, and communication with her child.

122. Altior Healthcare is associated with the residential-treatment network that includes The Ridge RTC in Maine.

123. On July 1, 2026, the custody court directed Russell to provide Robbins unsupervised contact beginning at noon on July 8, 2026.

124. Russell failed to deliver that contact between noon on July 8 and noon on July 10, 2026, and Robbins contested the later order replacing unsupervised contact with supervision.

125. In October 2026, Robbins contested Russell's continued placement of another child outside Pennsylvania and sought enforcement of her parenting rights.

126. Robbins also challenges the differing continuance treatment of counsel's February medical conflict and Stuck's later vacation-related request during the custody litigation.

127. On September 9, 2026, the Pennsylvania Superior Court affirmed the earlier custody order in No. 1746 MDA 2025 and addressed missing certified-record materials and waiver of several appellate issues.

128. Robbins lacked several custody transcripts, treatment records, and court documents needed for review.

129. Pennsylvania Bar Association and Union–Snyder County Bar Association restrictions, professional disciplinary proceedings, and withdrawn legal-service cooperation burdened the public-interest legal team handling Robbins's proceedings.

130. Union County justice and mental-health advisory participants initially communicated with Susquehanna Legal Aid for Adults and Youth but later withdrew committee or workgroup access after Martineau criticized public officials and professional institutions.

131. Union and Snyder County STOP Coalition participants restricted discussions of incumbent legal-aid shortcomings and cancelled service-coordination opportunities that Susquehanna Legal Aid for Adults and Youth sought for its clients.

132. The restrictions hindered legal assistance, witness cooperation, and records collection during Robbins's custody litigation.

133. The original pleadings also dispute Pennsylvania court-access practices involving Rule 240 fee waivers, Rule 1012 written attorney appearances, Magisterial District Judge Rule 207.1 attorney acknowledgments, and preservation of verbatim judicial records.

134. Robbins lost parenting time and incurred additional legal, investigative, and records costs.

## V. CLASS ACTION ALLEGATIONS

135. Robbins seeks certification under Federal Rule of Civil Procedure 23(a) and (b)(2) for Pennsylvania litigants subjected to common restrictions on independently retained counsel and access to court records.

136. Common questions include whether defendants coordinated restrictions on SLAAY and whether government officials participated in retaliation or denial of procedural rights.

137. Robbins's representation, custody proceedings, and records requests present the alleged common practices.

138. Robbins seeks classwide prospective relief and individualized damages where authorized.

## VI. INCORPORATED COMPLAINTS

139. Robbins incorporates the claims and supporting factual allegations in the ten attached complaints, Exhibits A through J, under Federal Rule of Civil Procedure 10(c).

## VII. CAUSES OF ACTION

**Exhibit A — Declaratory judgments (45 requests)**

**Declaratory judgment 1: Cases are not law.**

140. America is a civil law country. Courts violate the Constitution every time they cite a case as if it is a law. America is a civil law country, not a common law country. Article I vests all legislative powers in Congress. Article III gives courts judicial power, not legislative power. Judges do not get to write laws, invent laws, amend laws, repeal laws, or force Americans to obey rules invented in judicial opinions. Every time a court cites a case as if it were a law, instead of applying the actual Constitution and enacted statutes, that court violates the constitutional separation of powers. Calling a judicial opinion "binding precedent," "controlling authority," or "settled law" does not magically transform it into legislation. The Supreme Court cannot amend the Constitution by publishing opinions. Neither can the Third Circuit, federal district courts, or the Pennsylvania judiciary. Courts must stop treating cases as laws. (Ex. A at 2, ¶ 4.)

**Declaratory judgment 2: Cases are not evidence.**

141. Judges cannot prove their own rules work by quoting other judges who claim they work. Judicial opinions are not scientific studies, expert testimony, empirical research, statistical analysis, or evidence that procedural rules provide any benefit to the public. If a judge claims the Rules of Civil Procedure increase order, efficiency,

fairness, accuracy, or judicial economy, that judge must produce actual empirical evidence proving the claim. Quoting another judge who claimed the same thing proves nothing. Even 100 judges repeating the same unsupported factual claim does not turn it into evidence. The courts must produce genuine research, including scientific journal publications, independent expert analysis, reliable statistics, and actual comparisons between systems with and without the challenged rules. Judges cannot invent rules, declare those rules beneficial, cite one another's declarations as proof, and then use their own unsupported claims to deny Americans their constitutional rights. (Ex. A at 3, ¶ 5.)

**Declaratory judgment 3: Judicial immunity is unconstitutional, and courts, bar associations, judges, and lawyers have lied to the public about it.**

142. Judicial immunity is unconstitutional, was explicitly rejected by the Founding Fathers, and has been falsely represented as a legitimate constitutional protection. The Declaration of Independence, Constitutional Convention, Constitution, Federalist and Anti-Federalist writings, and early Supreme Court decisions do not authorize judges to exempt themselves from the laws everyone else must obey. Judges cannot invent immunity for judges. (Ex. A at 4, ¶ 6.)

**Declaratory judgment 4: Judges cannot define their own official functions while denying President Trump the same power.**

143. If President Trump cannot decide for himself which presidential acts qualify for immunity, judges cannot decide for themselves which judicial acts qualify for immunity. Lay juries must decide disputed facts concerning judicial functions. If courts insist that only judges may define judicial functions, they must apply the same rule to presidential functions. Otherwise, the judges have violated separation of powers and must face appropriate sanctions and discipline. (Ex. A at 4, ¶ 7.)

**Declaratory judgment 5: Written opinions dismissing cases before trial are not official functions entitled to judicial immunity.**

144. No unbiased adjudicator would conclude that writing opinions dismissing lawsuits before trial is an historically required official function of federal trial judges. Trial judges historically decided cases and entered judgments without writing modern explanatory opinions. Modern judicial preferences cannot manufacture additional constitutional immunity. (Ex. A at 5, ¶ 8.)

**Declaratory judgment 6: Every line of every judicial opinion must receive the same immunity scrutiny as President Trump's statements.**

145. If courts analyze Trump's words line by line to determine immunity, they must analyze judges' written opinions line by line. A judge cannot hide threats, false factual assertions, defamatory statements, instructions to third parties, or unconstitutional commands inside an opinion and declare the entire document immune. (Ex. A at 5, ¶ 9.)

**Declaratory judgment 7: People harmed by third parties inspired by judges can sue those judges just as people harmed by third parties inspired by Trump can sue Trump.**

146. Judges are subject to the same liability principles applied to presidential speech. A person harmed by judicial statements that encourage or enable actionable conduct by others may sue the responsible judge. Courts cannot allow third-party causation lawsuits against Trump while inventing special judicial immunity for equivalent conduct by judges. Applying different standards is unconstitutional tyranny. (Ex. A at 5, ¶ 10.)

**Declaratory judgment 8: Judges and lawyers are not more competent or less biased than lay juries, and courts have lied about their superiority.**

147. Empirical evidence demonstrates that ordinary people and juries can be more competent and less biased than judges and lawyers. Law school, college, bar examinations, and character-and-fitness investigations have no demonstrated

correlation to actual attorney competence. Nonlawyer enrolled agents can handle complex federal tax matters without law school or bar examinations. Judges cannot claim superiority merely because other judges have repeated that claim in opinions. (Ex. A at 6, ¶ 11.)

**Declaratory judgment 9: Even if judges were more competent than juries, the Constitution does not give them the jury's powers or the legislature's powers.**

148. Even proof of greater judicial expertise would not give judges authority to take factual disputes away from juries or enact rules reserved to legislatures. The Constitution does not establish a government in which whichever profession claims the most expertise gets to exercise every governmental power. (Ex. A at 6, ¶ 12.)

**Declaratory judgment 10: All mixed questions of law and fact must be tried to juries.**

149. Disputed facts concerning standing, jurisdiction, immunity, state action, intent, motive, credibility, causation, historical events, and official functions belong to juries. Judges cannot abolish jury rights by labeling factual questions "legal questions" or by inventing immunity and jurisdictional doctrines that prevent trials. (Ex. A at 6, ¶ 13.)

**Declaratory judgment 11: Courts have systematically favored their own allies when deciding who qualifies as a state actor.**

150. The Third Circuit and other courts apply state- action standards in a statistically discriminatory manner, shielding judges, attorneys, and organizations allied with the judiciary while finding state action in comparable relationships involving other institutions. Courts must confront the statistical evidence instead of protecting their own professional allies. (Ex. A at 7, ¶ 14.)

**Declaratory judgment 12: Bar associations are state actors when they exercise governmental power.**

151. Lawyer-controlled organizations cannot exercise governmental authority while denying that they are governmental actors. They cannot claim governmental

privileges whenever advantageous, private status whenever constitutional accountability arises, and immunity from antitrust law whenever competition is challenged. They must obey the laws governing their actual conduct. (Ex. A at 7, ¶ 15.)

**Declaratory judgment 13: Pretrial dismissals, attorney licensing, and procedural restrictions are unconstitutional prior restraints.**

152. Prior restraints include governmental restrictions imposed before people can exercise constitutional rights, not merely restrictions on speech. Procedural rules dismissing claims before juries hear them and rules preventing people from obtaining legal representation constitute prior restraints. Courts have supported these restrictions with speculation and fantasy instead of evidence. Post-trial sanctions offer a less restrictive alternative, and courts must empirically prove otherwise. (Ex. A at 7, ¶ 16.)

**Declaratory judgment 14: The rules of evidence are unconstitutional, harm the public, and have never been empirically proven to benefit society.**

153. The Rules of Evidence are invalid in their entirety. Judges have no legislative power to determine what information juries may hear. Lawyers have never demonstrated that hearsay exclusions and other evidentiary restrictions improve outcomes rather than increase legal fees, delay cases, and benefit lawyers. Judges must not simply assume their rules work. Trials should be governed by reasonable time limits rather than judicial control over evidentiary content. Judges whose institutional interests conflict with an honest evaluation must recuse and permit independent lay adjudication. (Ex. A at 8, ¶ 17.)

**Declaratory judgment 15: The federal rules of civil procedure and criminal procedure are unconstitutional judicial legislation.**

154. Federal judges cannot write legislation governing future litigants. Congress cannot give judges legislative power that the Constitution vests exclusively in Congress. The Federal Rules of Civil Procedure and Federal Rules of Criminal

Procedure are unconstitutional and invalid in their entirety under Plaintiff's constitutional challenge, irrespective of judicial opinions purporting to authorize them. (Ex. A at 8, ¶ 18.)

**Declaratory judgment 16: Local court rules are unconstitutional.**

155. Federal judges are not local legislatures. They cannot meet privately, vote among themselves, and impose generally applicable laws on the public. Convenience, docket management, and judges' personal preferences do not create legislative power. (Ex. A at 9, ¶ 19.)

**Declaratory judgment 17: The Rules of Professional Conduct are unconstitutional judicial legislation and anticompetitive regulation.**

156. Judges write the rules governing attorneys' speech, petitioning, communications, fees, representation, associations, competition, and reporting obligations even though judges possess judicial power, not legislative power. Judges and incumbent lawyers cannot write the rules governing their own profession and then claim constitutional authority to enforce those rules against the public and their competitors. (Ex. A at 9, ¶ 20.)

**Declaratory judgment 18: Attorney-admission requirements are unconstitutional, anticompetitive barriers to entry.**

157. Existing lawyers cannot collectively decide who is allowed to compete against them. Lawyers cannot restrict the supply of attorneys, raise the cost of legal representation, and then claim that consumers benefit without producing real empirical proof. Judicial opinions approving these barriers are not laws or evidence. (Ex. A at 9, ¶ 21.)

**Declaratory judgment 19: Mandatory law school is unconstitutional, anticompetitive, and has no demonstrated connection to attorney competence.**

158. Mandatory law-school attendance imposes enormous financial and temporal costs on prospective lawyers, artificially restricts competition, protects incumbent attorneys and approved law schools, and increases legal fees. Lawyers cannot force

the public to pay for their preferred educational system without proving that the system produces better attorneys or protects clients. (Ex. A at 10, ¶ 22.)

**Declaratory judgment 20: Mandatory bar examinations are unconstitutional, anticompetitive, and have no demonstrated connection to attorney competence.**

159. The bar examination does not establish actual competence in representing clients. The legal profession cannot control the supply of competitors through examinations it creates, administers, and enforces. Assertions that bar examinations protect the public require real scientific proof, not self-serving judicial opinions. (Ex. A at 10, ¶ 23.)

**Declaratory judgment 21: Character-and-fitness requirements are unconstitutional tools for excluding competitors and punishing dissent.**

160. Subjective character-and-fitness examinations have no demonstrated relationship to competence and permit lawyers to exclude prospective competitors based on speech, criticism, litigation, disability, finances, personal history, and associations. Such discretionary restrictions permit discrimination and retaliation disguised as professional regulation. (Ex. A at 10, ¶ 24.)

**Declaratory judgment 22: Lawyer peer-reporting is unconstitutional and harms the public.**

161. Judges have delegated governmental authority to the legal profession three separate times. Judges write the rules. Judges adjudicate alleged violations of those rules. Instead of using lay monitors, secret shoppers, polls, independent investigations, or other methods of discovering misconduct, judges delegate responsibility a third time to individual lawyers through mandatory peer reporting. Lawyers cannot be trusted to regulate their economic competitors without genuinely independent public control, and their financial, professional, social, and institutional conflicts do not disappear when judges require them to report one another. (Ex. A at 11, ¶ 25.)

**Declaratory judgment 23: Judges cannot be their own adjudicators.**

162. Judges cannot write the Rules of Professional Conduct and then serve as the adjudicators determining whether members of the legal profession violated the rules that judges themselves created. Judges and lawyers cannot be their own police, prosecutors, juries, judges, and appellate courts. The existing system must be replaced by independent public accountability, including lay prosecutors and lay juries. (Ex. A at 11, ¶ 26.)

**Declaratory judgment 24: Lawyers have lied to the public about whether letting an attorney's closest friends and drinking buddies arbitrate fee disputes between the attorney and client is in the public's best interest.**

163. Lawyers and bar associations cannot establish that attorney-controlled fee arbitration benefits clients simply by claiming that it does. Allowing an attorney's closest friends, professional associates, and drinking buddies to arbitrate disputes between that attorney and a client creates a conflict of interest. Whether this arrangement benefits the public is an empirical question requiring independent research, actual client outcomes, comparative evidence, and public participation, not the unsupported opinions of lawyers who benefit from the arrangement. (Ex. A at 12, ¶ 27.)

**Declaratory judgment 25: The American Rule is unconstitutional judge-made law.**

164. The American Rule is not legislation, that decisions attributed to Dallas and Arcambel cannot enact a national fee regime, and that courts cannot use centuries of repeated citations to transform judicial preferences into binding law. Courts cannot arbitrarily or sua sponte reduce earned fees without lawful authority and a meaningful opportunity to litigate the issue. Historical misrepresentations used to preserve this rule cannot supply lawful authority. (Ex. A at 12, ¶ 28.)

**Declaratory judgment 26: Law firms and legal-aid organizations cannot abandon clients when their attorneys leave.**

165. A client's relationship with a law firm or legal-aid organization does not vanish when the assigned attorney resigns. The organization cannot abandon the client because an assigned attorney left. It must fulfill its obligations, arrange competent replacement representation, or complete a lawful transition protecting the client. Permissive withdrawal rules cannot give lawyers greater protection than the clients they agreed to serve. (Ex. A at 12, ¶ 29.)

**Declaratory judgment 27: Judges cannot decide their own recusal motions, and the legal profession's failure to solve this problem exposes its false expertise claims.**

166. An accused judge cannot be the final decisionmaker concerning that judge's own bias. Independent lay adjudication is required. Lawyers and judges insist only their profession possesses enough expertise to write procedural rules, yet they have failed to resolve the obvious conflict inherent in judges adjudicating their own impartiality. Their asserted professional superiority does not justify this system. (Ex. A at 13, ¶ 30.)

**Declaratory judgment 28: Judges and court employees cannot invent laws governing courthouse operations.**

167. Courthouse hours, recording policies, dress codes, public rooms, hearings, filing systems, security, remote access, transcripts, audio, scheduling, and access to judicial facilities are governmental functions subject to the Constitution. Judges cannot legislate through administrative orders, unwritten preferences, or claims of inherent power. The public must receive transparent, independent governance. (Ex. A at 13, ¶ 31.)

**Declaratory judgment 29: The dual-sovereignty doctrine violates double jeopardy, and comity cannot protect government while abandoning individuals.**

168. Two governments cannot evade the prohibition against double jeopardy merely by calling themselves separate sovereigns. Nor may government evade constitutional

protection by relabeling repeated punishment civil, criminal, disciplinary, administrative, contempt, or licensing. Courts cannot demand respect for sovereign dignity while refusing comparable protection to human beings. (Ex. A at 14, ¶ 32.)

**Declaratory judgment 30: The public can record all government officials in any government building, including judges off-the-record.**

169. Judges cannot invent special exemptions from public observation and recording for themselves, their courtrooms, chambers, off-the-record conversations, or other governmental activities. The historical reaction to sensational Lindbergh-baby-era courtroom coverage was not scientific proof that cameras harm justice. Judges must not continue imposing categorical recording bans because previous judges disliked publicity. (Ex. A at 14, ¶ 33.)

**Declaratory judgment 31: Stare decisis and binding judicial precedent are unconstitutional.**

170. One judge cannot make law for future Americans by writing an opinion. Neither 10 nor 10,000 judges repeating an unconstitutional proposition can transform it into a constitutional law. Stare decisis cannot amend constitutions, enact statutes, repeal legislation, authorize governmental power, or convert judicial errors into binding laws. (Ex. A at 14, ¶ 34.)

**Declaratory judgment 32: Legislative history is not law, and courts have lied about legislative history.**

171. The Federalist Papers, Anti-Federalist writings, legislative debates, committee reports, drafts, convention materials, and statements by individual lawmakers are historical evidence, not enacted law. Judges cannot quote selected historical sources, conceal contrary evidence, misrepresent the Founders' intentions, and then declare their preferred historical narrative binding law. Judicial office does not turn false history into truth. (Ex. A at 15, ¶ 35.)

**Declaratory judgment 33: Younger, abstention, comity, prudence, and other judge-created excuses for refusing jurisdiction are unconstitutional.**

172. Judges cannot refuse to exercise jurisdiction conferred by Congress and the Constitution merely because they prefer not to hear a case. Jurisdiction is not optional. Judicial doctrines cannot repeal federal statutes, and courts cannot invent excuses to avoid examining misconduct by other judges or powerful legal institutions. (Ex. A at 15, ¶ 36.)

**Declaratory judgment 34: All means all.**

173. Judges cannot change constitutional words because they dislike the consequences. When the Constitution says all legislative powers, it means all legislative powers. Judges cannot silently replace "all" with "some" to preserve inherent powers, judicial immunity, abstention, rulemaking authority, or other judicial inventions. A judicial opinion cannot amend ordinary English. (Ex. A at 15, ¶ 37.)

**Declaratory judgment 35: The guarantee clause is law, and the political-question doctrine cannot erase it.**

174. The Guarantee Clause is actual constitutional law, while the political-question doctrine is a doctrine invented by judges. Judges cannot use their own opinions to declare that provisions of the Constitution are unenforceable. The Constitution cannot be overruled by a judicial doctrine. (Ex. A at 16, ¶ 38.)

**Declaratory judgment 36: Courts have no inherent powers.**

175. Period. Article III gives courts judicial power and nothing MORE. Judges do not possess an invisible reservoir of legislative, regulatory, punitive, administrative, or governmental power that they may invoke whenever convenient. They cannot create immunity, enact procedural laws, impose unauthorized punishments, restrict filings, or govern the legal profession simply by declaring their powers "inherent." (Ex. A at 16, ¶ 39.)

**Declaratory judgment 37: Courts must follow plain enacted text and cannot erase words through selective interpretation.**

176. Judges cannot disregard ordinary statutory or constitutional language because the result would restrict judicial power. Courts must also apply the rule against surplusage consistently. The Taxing and Spending Clause cannot become an unlimited federal police power, and Article VI's express command binding state judges cannot be treated as meaningless. (Ex. A at 16, ¶ 40.)

**Declaratory judgment 38: Courts have lied about jury trials being more expensive, slower, or less efficient than judicial adjudication.**

177. Claims of judicial efficiency require empirical proof comparing all costs: judges' salaries, taxpayer-funded law clerks, chambers staff, motion practice, written opinions, appeals, remands, jury costs, facilities, and alternative procedures. A judge's belief that juries cost too much is not evidence. Judicial convenience cannot abolish the constitutional right to trial by jury. (Ex. A at 17, ¶ 41.)

**Declaratory judgment 39: Lawyers' opinions, bar committee consensus, and anecdotes are not scientific research or proof that programs benefit the public.**

178. Bar associations and courts cannot claim that their activities serve community needs merely because attorneys believe they do. Actual research requires proper needs assessments, affected-community participation, disclosed methodology, measurable outcomes, comparative evidence, and independent evaluation. Calling a lawyer's opinion a “study,” “strategic plan,” or “professional recommendation” does not make it evidence. (Ex. A at 17, ¶ 42.)

**Declaratory judgment 40: There is no numerical limit on nonfrivolous lawsuits, and courts engage in tyranny when they use rules 8 and 12(b)(6) to prevent Americans from pursuing their claims.**

179. A person with 40 nonfrivolous causes of action is entitled to pursue all 40. A person with 200 distinct legal injuries is entitled to seek redress for all 200. Judges cannot use word limits, page limits, pleading rules, judicial convenience, or

personal irritation to force citizens to abandon valid claims. Rule 8 and Rule 12(b)(6) do not establish numerical claim limits, and judicial opinions cannot invent one. Americans do not lose constitutional rights because exercising those rights creates work for judges. (Ex. A at 17, ¶ 43.)

**Declaratory judgment 41: Pennsylvania appellate court rules harm the public.**

180. Pennsylvania appellate procedures harm the public and benefit wealthy, powerful lawyers and judges by imposing unnecessary, expensive procedural barriers between litigants and decisions on the merits. The failure of those procedures to provide meaningful appellate review must be evaluated through actual public outcomes, including the experiences of indigent and self-represented litigants, rather than unsupported claims of judicial efficiency. (Ex. A at 18, ¶ 44.)

**Declaratory judgment 42: Judges cannot use procedural technicalities to avoid deciding appeals on their merits.**

181. Appellate judges cannot avoid the merits by using judge-created rules concerning preservation, Rule 1925(b) statements, differences between those statements and appellate briefs, record citations, reproduced records, paper copies, or other procedural technicalities when such rules deny meaningful review of substantive claims. (Ex. A at 18, ¶ 45.)

**Declaratory judgment 43: Indigent litigants cannot be required to reproduce appellate court records.**

182. Indigent appellants who proceed in forma pauperis cannot be required to reproduce the appellate record and that courts cannot penalize them for the failure of court personnel to assemble or transmit the certified record, or impose unaffordable transcript and record-production requirements that defeat their appeals. Pa.R.A.P. 2151(b). (Ex. A at 19, ¶ 46.)

**Declaratory judgment 44: Guardians ad litem are unconstitutional.**

183. Guardians ad litem are unconstitutional because they exercise influence over fundamental parental rights through an unelected, lawyer-controlled role, may offer

opinions without sworn testimony or an adequate investigation, and can displace evidence and parental decision-making without the impartiality, accountability, and constitutional safeguards required for such governmental functions. (Ex. A at 19, ¶ 47.)

**Declaratory judgment 45: Judges benefit when they avoid deciding appeals on the merits.**

184. It is a cognizable benefit for judges to avoid deciding appeals on the merits because they perform less work for the same pay, that this benefit constitutes a conflict of interest, and that judges therefore cannot participate in drafting laws or rules that permit them to do anything other than address the merits of an appeal. (Ex. A at 19, ¶ 48.)

**Exhibit B — First Amendment retaliation and retaliation conspiracy (COAs 1–49)**

Defendants assigned to COAs 1–245 (Exhibits B–F): Union County Criminal Justice Advisory Board; Union County Mental Health Advisory Committee; Union County STOP Coalition; Snyder County STOP Coalition; Pennsylvania Bar Association; Union–Snyder County Bar Association; Pennsylvania Legal Aid Network, Inc.; North Penn Legal Services, Inc.; Transitions Legal Center; Transitions of PA; Bloomsburg Fair Association; Michael F. J. Piecuch; Lori R. Hackenberg; Jeffrey A. Rowe; Mark J. Conway; Matthew W. Brann; Robert Leadbeter; Heath Brosius; Brian Kerstetter; Jamie Saleski; K. Michael Sullivan; Sarah Stigerwalt-Egan; Alexandra Sholley; Kathleen Lincoln; Brian Ulmer; Jessica Chapman; William R. Christman III; Gabriele Miller-Wagner; David K. Trevaskis; Lori A. Molloy; Timothy Smith; Mary Beth Clark; David Andrew Strouse; Jenna Ann Neidig; Robert Cravitz; Pennsylvania Department of Military and Veterans Affairs; Office of Disciplinary Counsel; United States Bankruptcy Court for the Middle District of Pennsylvania; Kylie Aikey; Marsha Skoff; Rachel Wiest-Benner; Bucknell University; Matthew Cravitz; Karoline Mehalchick; Jennifer P. Wilson; Snyder County Children and Youth Services; The Ridge RTC, Maine; Russell W. Robbins; Gregory A. Stuck.

185. Those defendants knew that Robbins filed custody objections, sought appellate review, and retained Martineau and SLAAY to criticize official conduct and petition for judicial relief. (Ex. B at 2, ¶ 3; Ex. B at 2, ¶ 4; Ex. B at 2, ¶ 5.)

186. Those defendants restricted access to legal-service volunteers, governmental advisory meetings, professional cooperation, records, and court proceedings after that protected advocacy. (Ex. B at 5, ¶ 21; Ex. B at 7, ¶ 33; Ex. B at 8, ¶ 36; Ex. B at 11, ¶ 54.)

187. Those defendants imposed those adverse restrictions because Robbins and her chosen representatives criticized institutional actors and pursued litigation rather than abandoning their complaints. (Ex. B at 8, ¶ 34; Ex. B at 8, ¶ 37; Ex. B at 9, ¶ 39; Ex. B at 19, ¶ 99.)

188. Those defendants used governmental offices, delegated public duties, or coordinated acts with government officials in imposing the identified restrictions. (Ex. B at 5, ¶ 22; Ex. B at 6, ¶ 24; Ex. B at 11, ¶ 54; Ex. B at 12, ¶ 60.)

189. Those defendants caused Robbins added legal expense, reduced access to assistance, interference with her representation, and delay in pursuing custody and appellate relief. (Ex. B at 4, ¶ 14; Ex. B at 9, ¶ 41; Ex. B at 10, ¶ 45.)

**Exhibit C — Civil-rights conspiracy and failure to prevent (COAs 50–98)**

The defendants assigned to Exhibits B–F above are named in this cause of action.

190. Those defendants joined coordinated actions directed at litigation and professional activity undertaken for Robbins and similarly situated clients. (Ex. C at 3, ¶ 190; Ex. C at 3, ¶ 191; Ex. C at 4, ¶ 195.)

191. Those defendants sought to deter protected petitioning and obstruct access to attorneys, cooperating witnesses, and governmental programs. (Ex. C at 4, ¶ 195; Ex. C at 4, ¶ 200; Ex. C at 5, ¶ 206.)

192. Those defendants carried out that agreement by withholding participation, imposing no-contact directives, curtailing referrals, or restricting the legal team's

professional access. (Ex. C at 5, ¶ 206; Ex. C at 9, ¶ 212; Ex. C at 12, ¶ 218; Ex. C at 19, ¶ 230.)

193. Those defendants acted with the alleged invidious discriminatory purpose of depriving disfavored legal-aid clients and the clients of independent legal-service providers of equal access to judicial relief. (Ex. C at 3, ¶ 190; Ex. C at 3, ¶ 191; Ex. C at 4, ¶ 195.)

194. Those defendants received notice of the challenged conduct and retained the practical power to oppose or prevent their own organizations' participation but continued the restrictions. (Ex. C at 3, ¶ 191; Ex. C at 5, ¶ 202; Ex. C at 9, ¶ 213.)

195. Those defendants caused Robbins additional litigation expense, delay, loss of cooperation, and impairment of her ability to pursue civil relief. (Ex. C at 2, ¶ 181; Ex. C at 2, ¶ 184; Ex. C at 4, ¶ 201.)

**Exhibit D — Negligence, professional duties, and ultra vires (COAs 99–147)**

The defendants assigned to Exhibits B–F above are named in this cause of action.

196. Those defendants assumed duties governing professional representation, court operations, public referrals, attorney regulation, or participation in the legal-services undertakings affecting Robbins. (Ex. D at 9, ¶ 562; Ex. D at 10, ¶ 563; Ex. D at 11, ¶ 566.)

197. Those defendants failed to carry out the duties and undertakings they accepted by restricting substitute representation, communications, review, or appropriate treatment of filings and referrals. (Ex. D at 12, ¶ 572; Ex. D at 16, ¶ 579; Ex. D at 21, ¶ 587.)

198. Those defendants violated the professional, protective, or operational requirements asserted for each defendant in the individual negligence and ultra vires applications. (Ex. D at 10, ¶ 563; Ex. D at 12, ¶ 572; Ex. D at 16, ¶ 579.)

199. Those defendants caused foreseeable disruption to Robbins's attorney-client engagement, record access, and custody and appellate proceedings by those breaches. (Ex. D at 11, ¶ 566; Ex. D at 16, ¶ 579; Ex. D at 25, ¶ 595.)

200. Those defendants caused Robbins additional representation expenses, delayed access to records, and loss of legal-service opportunities. (Ex. D at 11, ¶ 566; Ex. D at 21, ¶ 587; Ex. D at 28, ¶ 599.)

**Exhibit E — Sherman Act § 1 group boycott (COAs 148–196)**

The defendants assigned to Exhibits B–F above are named in this cause of action.

201. Those defendants agreed with other independently controlled actors to reduce referrals, volunteer cooperation, legal-service access, and the ability of SLAAY to compete for public-service and representation opportunities. (Ex. E at 2, ¶ 1041; Ex. E at 3, ¶ 1044; Ex. E at 5, ¶ 1047.)

202. Those defendants withdrew or restricted cooperation with SLAAY and Martineau through bar, legal-aid, government, and professional referral channels. (Ex. E at 7, ¶ 1055; Ex. E at 9, ¶ 1061; Ex. E at 9, ¶ 1063.)

203. Those defendants affected the supply, financing, referrals, and provision of civil legal services across state lines. (Ex. E at 2, ¶ 1041; Ex. E at 3, ¶ 1042; Ex. E at 3, ¶ 1044.)

204. Those defendants caused restrictions on affordable representation and increased expenses for Robbins in obtaining legal assistance and pursuing her claims. (Ex. E at 3, ¶ 1044; Ex. E at 4, ¶ 1045; Ex. E at 5, ¶ 1047.)

**Exhibit F — Intentional interference with contracts (COAs 197–245)**

The defendants assigned to Exhibits B–F above are named in this cause of action.

205. Those defendants knew or received notice that Robbins retained Martineau and SLAAY to pursue custody enforcement, treatment records, and appellate relief. (Ex. F at 2, ¶ 1171; Ex. F at 3, ¶ 1173; Ex. F at 4, ¶ 1176.)

206. Those defendants deliberately interfered with the performance of that representation by restricting attorney cooperation, available referrals, and access to resources required for the engagement. (Ex. F at 5, ¶ 1177; Ex. F at 5, ¶ 1179; Ex. F at 8, ¶ 1188.)

207. Those defendants used coordinated exclusion, threats of sanction, or professional restrictions rather than ordinary independent service decisions to disrupt Robbins's representation. (Ex. F at 6, ¶ 1182; Ex. F at 7, ¶ 1185; Ex. F at 9, ¶ 1189.)

208. Those defendants caused additional expense, disrupted legal work, and delayed Robbins's pursuit of custody, records, and appellate remedies. (Ex. F at 2, ¶ 1171; Ex. F at 4, ¶ 1176; Ex. F at 9, ¶ 1189.)

**Exhibit G — Civil RICO and RICO conspiracy (COAs 246–324)**

Defendants assigned to COAs 246–482 (Exhibits G–I): ADMINISTRATIVE OFFICE OF PENNSYLVANIA COURTS; KYLIE AIKEY; AMERICAN BAR ASSOCIATION; BLOOMSBURG FAIR ASSOCIATION; MATTHEW W. BRANN; HEATH BROSIUS; BUCKNELL UNIVERSITY; JESSICA CHAPMAN; WILLIAM R. CHRISTMAN III; CIVIL PROCEDURAL RULES COMMITTEE OF THE SUPREME COURT OF PENNSYLVANIA; MARY BETH CLARK; CLINTON COUNTY BAR ASSOCIATION; COMMITTEE ON RULES OF PRACTICE AND PROCEDURE; COMMONWEALTH OF PENNSYLVANIA; MARK J. CONWAY; COURT OF JUDICIAL DISCIPLINE OF PENNSYLVANIA; MATTHEW CRAVITZ; ROBERT CRAVITZ; CRIMINAL PROCEDURAL RULES COMMITTEE OF THE SUPREME COURT OF PENNSYLVANIA; DISCIPLINARY BOARD OF THE SUPREME COURT OF PENNSYLVANIA; FEDERAL JUDICIAL CENTER; LORI R. HACKENBERG; INTERNATIONAL LEGAL AID GROUP; SEVENTEENTH JUDICIAL DISTRICT OF PENNSYLVANIA; JUDICIAL CONDUCT BOARD OF PENNSYLVANIA; JUDICIAL CONFERENCE OF THE UNITED STATES; HEATHER KELLY; BRIAN KERSTETTER; ROBERT LEADBETER; LEGAL SERVICES CORPORATION; KATHLEEN LINCOLN; LYCOMING LAW ASSOCIATION; KAROLINE MEHALCHICK; GABRIELE MILLER-WAGNER; LORI A. MOLLOY; NATIONAL CONFERENCE OF BAR EXAMINERS; JENNA ANN NEIDIG; NORTH PENN LEGAL SERVICES, INC.; NORTHUMBERLAND COUNTY PROTHONOTARY'S OFFICE; OFFICE OF DISCIPLINARY COUNSEL;

OFFICE OF THE ATTORNEY GENERAL OF PENNSYLVANIA; PENNSYLVANIA BAR ASSOCIATION; PENNSYLVANIA BOARD OF LAW EXAMINERS; PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES; PENNSYLVANIA DEPARTMENT OF MILITARY AND VETERANS AFFAIRS; PENNSYLVANIA GENERAL ASSEMBLY; PENNSYLVANIA LEGAL AID NETWORK, INC.; MICHAEL F. J. PIECUCH; JEFFREY A. ROWE; JAMIE SALESKI; ALEXANDRA SHOLLEY; MARSHA SKOFF; TIMOTHY SMITH; SNYDER COUNTY; SNYDER COUNTY STOP COALITION; SARAH STIGERWALT-EGAN; DAVID ANDREW STROUSE; K. MICHAEL SULLIVAN; SUPREME COURT OF PENNSYLVANIA; TRANSITIONS LEGAL CENTER; TRANSITIONS OF PA; DAVID K. TREVASKIS; BRIAN ULMER; UNION COUNTY; UNION COUNTY CRIMINAL JUSTICE ADVISORY BOARD; UNION COUNTY MENTAL HEALTH ADVISORY COMMITTEE; UNION COUNTY STOP COALITION; UNION–SNYDER COUNTY BAR ASSOCIATION; UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA; UNITED STATES CONGRESS; UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA; RACHEL WIEST-BENNER; JENNIFER P. WILSON; SNYDER COUNTY CHILDREN AND YOUTH SERVICES; THE RIDGE RTC (MAINE); RUSSELL W. ROBBINS; GREGORY A. STUCK.

209. Those defendants associated with the alleged continuing legal-services, court-administration, professional-regulation, and referral network affecting Robbins. (Ex. G at 5, ¶ 1302; Ex. G at 8, ¶ 1313; Ex. G at 10, ¶ 1319.)

210. Those defendants participated in the activities of that association through professional restrictions, representations about legal-service access, and coordinated administration of programs. (Ex. G at 6, ¶ 1308; Ex. G at 8, ¶ 1313; Ex. G at 10, ¶ 1319.)

211. Those defendants used mailed materials to communicate materially misleading information concerning legal-service eligibility, professional oversight, program access, or funded-service delivery to obtain or retain money or property. (Ex. G at 8, ¶ 1314; Ex. G at 9, ¶ 1315; Ex. G at 9, ¶ 1316.)

212. Those defendants used interstate electronic communications concerning the same allegedly deceptive representations and economic objectives to obtain or retain money or property. (Ex. G at 6, ¶ 1308; Ex. G at 8, ¶ 1314; Ex. G at 9, ¶ 1315.)

213. Those defendants committed or participated in at least two related alleged predicate acts within ten years and a continuing practice of using those communications to advance the alleged scheme. (Ex. G at 6, ¶ 1305; Ex. G at 9, ¶ 1316; Ex. G at 9, ¶ 1317.)

214. Those defendants agreed to maintain the alleged enterprise activities despite notices challenging the harm to clients and independent legal-service providers. (Ex. G at 8, ¶ 1313; Ex. G at 10, ¶ 1319; Ex. G at 13, ¶ 1331.)

215. Those defendants caused Robbins additional payments, representation costs, and loss of access to legally available services in connection with her custody litigation. (Ex. G at 7, ¶ 1310; Ex. G at 10, ¶ 1319; Ex. G at 13, ¶ 1331.)

**Exhibit H — Sherman and Clayton Acts, monopoly and restraint (COAs 325–403)**

The defendants assigned to Exhibits G–I above are named in this cause of action.

216. Those defendants participated in the alleged markets for civil representation, referrals, court access, professional credentials, and publicly connected legal-service opportunities. (Ex. H at 8, ¶ 2424; Ex. H at 9, ¶ 2427; Ex. H at 10, ¶ 2431.)

217. Those defendants agreed or coordinated with other market participants to restrict referrals, access, and alternatives to lawyer-controlled service channels. (Ex. H at 7, ¶ 2421; Ex. H at 10, ¶ 2431; Ex. H at 13, ¶ 2443.)

218. Those defendants maintained exclusionary rules, practical control of service routes, or barriers affecting independent providers and their clients. (Ex. H at 8, ¶ 2424; Ex. H at 13, ¶ 2443; Ex. H at 15, ¶ 2451.)

219. Those defendants exercised or sought monopoly power in the alleged service and referral markets by excluding alternative providers and preserving incumbent control. (Ex. H at 8, ¶ 2424; Ex. H at 13, ¶ 2443; Ex. H at 15, ¶ 2451.)

220. Those defendants affected interstate provision and financing of legal services, including dealings through Pennsylvania bar and nonprofit networks. (Ex. H at 7, ¶ 2421; Ex. H at 7, ¶ 2423; Ex. H at 9, ¶ 2427.)

221. Those defendants caused Robbins higher representation expense, diminished service options, and delay in her custody and related civil claims. (Ex. H at 8, ¶ 2424; Ex. H at 9, ¶ 2427; Ex. H at 13, ¶ 2443.)

**Exhibit I — Federal constitutional and Pennsylvania civil conspiracy (COAs 404–482)**

The defendants assigned to Exhibits G–I above are named in this cause of action.

222. Those defendants acted in coordination concerning barriers to Robbins's retained representation and her attempts to enforce custody and obtain records. (Ex. I at 6, ¶ 2836; Ex. I at 6, ¶ 2837; Ex. I at 7, ¶ 2840.)

223. Those defendants participated in state-directed measures or joint activity with judicial and county actors controlling litigation, referrals, access, or records. (Ex. I at 7, ¶ 2838; Ex. I at 7, ¶ 2839; Ex. I at 9, ¶ 2846.)

224. Those defendants implemented the restrictions described in the individualized allegations of Exhibit I, including interference with collaboration and legal-service access. (Ex. I at 9, ¶ 2846; Ex. I at 10, ¶ 2848; Ex. I at 11, ¶ 2850.)

225. Those defendants interfered with First Amendment petitioning, parental procedural rights, and equal access to counsel and records through those coordinated acts. (Ex. I at 6, ¶ 2837; Ex. I at 7, ¶ 2839; Ex. I at 7, ¶ 2840.)

226. Those defendants pursued the claimed common purpose of restricting Robbins's retained counsel and parental litigation rather than independent lawful service decisions. (Ex. I at 6, ¶ 2837; Ex. I at 7, ¶ 2840; Ex. I at 9, ¶ 2844.)

227. Those defendants caused Robbins direct delay, expenses, reduced contact or record access, and interference with her retained legal assistance. (Ex. I at 6, ¶ 2836; Ex. I at 6, ¶ 2837; Ex. I at 9, ¶ 2844.)

**Exhibit J — Specific contract, custody, treatment, civil-rights and other claims (COAs 483–528, 528B–528C)**

**Breach of contract**

Defendants against whom this cause of action is pleaded: Kathleen Lincoln; The Ridge RTC (Maine); Altior Healthcare, LLC.

228. Those defendants entered enforceable agreements to provide legal representation or residential services affecting Robbins and her children. (Ex. J at 3, ¶ 10.)

229. Those defendants failed to perform obligations concerning the representation, consultation, parental consent, or service. (Ex. J at 4, ¶ 14.)

230. Those defendants caused Robbins costs, lost services, and additional litigation expense. (Ex. J at 7, ¶ 30.)

**Breach of fiduciary duty**

Defendants against whom this cause of action is pleaded: Kathleen Lincoln; Brian Ulmer.

231. Those defendants accepted fiduciary responsibilities to Robbins through attorney-client or guardian-related undertakings. (Ex. J at 8, ¶ 34.)

232. Those defendants acted contrary to those duties by failing to protect the interests and information entrusted to them. (Ex. J at 8, ¶ 35.)

233. Those defendants caused Robbins loss of legal assistance, additional expense, and damage to her parental interests. (Ex. J at 19, ¶ 96.)

**Abuse of process**

Defendants against whom this cause of action is pleaded: Russell W. Robbins; Gregory A. Stuck; Brian Ulmer; Kathleen Lincoln; Kylie Aikey; Lori R. Hackenberg; Seventeenth Judicial District of Pennsylvania.

234. Those defendants used legal process in the custody proceedings affecting Robbins. (Ex. J at 17, ¶ 85.)

235. Those defendants used that process primarily to pressure, obstruct, or disadvantage Robbins for a purpose other than its proper adjudication. (Ex. J at 18, ¶ 87.)

236. Those defendants caused additional court proceedings, loss of contact, and legal expense. (Ex. J at 19, ¶ 95.)

Wrongful use of civil proceedings — 42 Pa.C.S. § 8351

Defendants against whom this cause of action is pleaded: Russell W. Robbins; Gregory A. Stuck.

237. Those defendants initiated or procured contested proceedings against Robbins. (Ex. J at 17, ¶ 86.)

238. Those defendants acted without probable cause and for a purpose other than securing proper adjudication. (Ex. J at 18, ¶ 92.)

239. Robbins alleges that the proceedings challenged in this cause of action terminated in her favor. (Ex. J at 19, ¶ 93.)

240. Those defendants caused costs and disruption in defending those proceedings. (Ex. J at 19, ¶ 93.)

**Unjust enrichment**

Defendants against whom this cause of action is pleaded: Kathleen Lincoln; The Ridge RTC (Maine); Altior Healthcare, LLC.

241. Those defendants received payment, services, legal work, or another benefit arising from Robbins's arrangements. (Ex. J at 31, ¶ 161.)

242. Those defendants retained that benefit without providing the corresponding agreed service or lawful basis. (Ex. J at 32, ¶ 162.)

243. Those defendants caused Robbins financial loss by retaining the benefit. (Ex. J at 32, ¶ 163.)

**Americans with Disabilities Act, Title III — 42 U.S.C. § 12182**

Defendants against whom this cause of action is pleaded: The Ridge RTC (Maine); North Penn Legal Services, Inc.; Transitions of PA; Transitions Legal Center; Altior Healthcare, LLC.

244. Those defendants operated the identified public accommodation or service facility. (Ex. J at 43, ¶ 222.)

245. Those defendants denied or failed to afford meaningful access or reasonable modification in connection with a disability. (Ex. J at 44, ¶ 228.)

246. Those defendants caused exclusion or reduced access to treatment or legal services and resulting injury. (Ex. J at 45, ¶ 235.)

**Rehabilitation Act, § 504 — 29 U.S.C. § 794**

Defendants against whom this cause of action is pleaded: The Ridge RTC (Maine); Pennsylvania Department of Human Services; Snyder County Children and Youth Services; Snyder County; Seventeenth Judicial District of Pennsylvania; Administrative Office of Pennsylvania Courts; North Penn Legal Services, Inc.; Pennsylvania Legal Aid Network, Inc.; Transitions of PA; Transitions Legal Center; Altior Healthcare, LLC.

247. Those defendants received or administered federal assistance for the relevant program or facility. (Ex. J at 48, ¶ 255.)

248. Those defendants provided a program that Robbins or her affected child sought to use while qualified for its benefits. (Ex. J at 49, ¶ 260.)

249. Those defendants denied or impaired participation by reason of disability. (Ex. J at 51, ¶ 270.)

250. Those defendants caused reduced program access and resulting injury. (Ex. J at 51, ¶ 270.)

**Individuals with Disabilities Education Act — 20 U.S.C. § 1415**

Defendants against whom this cause of action is pleaded: The Ridge RTC (Maine); Pennsylvania Department of Human Services; Snyder County Children and Youth Services; Seventeenth Judicial District of Pennsylvania; Altior Healthcare, LLC.

251. Those defendants participated in decisions concerning special-education programming or placement for a child eligible for IDEA protections. (Ex. J at 55, ¶ 294.)

252. Those defendants limited parental participation, notice, records, or appropriate educational placement procedures. (Ex. J at 55, ¶ 296.)

253. Those defendants caused Robbins loss of participation in special-education decisions and related injury. (Ex. J at 56, ¶ 302.)

Pennsylvania Constitution, article I, § 1 — liberty, reputation, and family integrity

Defendants against whom this cause of action is pleaded: Seventeenth Judicial District of Pennsylvania; Supreme Court of Pennsylvania; Administrative Office of Pennsylvania Courts; Commonwealth of Pennsylvania; Snyder County; Snyder County Children and Youth Services; Pennsylvania Department of Human Services; Russell W. Robbins; Gregory A. Stuck; Brian Ulmer; Kathleen Lincoln; The Ridge RTC (Maine); Altior Healthcare, LLC.

254. Those defendants exercised state authority affecting Robbins's liberty, reputation, or family integrity. (Ex. J at 60, ¶ 325.)

255. Those defendants restricted Robbins's parental participation and rights without constitutional justification. (Ex. J at 60, ¶ 328.)

256. Those defendants caused loss of parental contact, costs, and damage to family relationships. (Ex. J at 61, ¶ 330.)

Pennsylvania Constitution, article I, § 6 — civil jury trial

Defendants against whom this cause of action is pleaded: Supreme Court of Pennsylvania; Seventeenth Judicial District of Pennsylvania; Administrative Office of Pennsylvania Courts; Civil Procedural Rules Committee of the Supreme Court of Pennsylvania; Commonwealth of Pennsylvania.

257. Those defendants controlled adjudication of civil issues for which Robbins demanded a jury. (Ex. J at 67, ¶ 374.)

258. Those defendants withheld a jury determination of disputed matters that Robbins alleges were jury-triable. (Ex. J at 67, ¶ 378.)

259. Those defendants deprived Robbins of the requested determination and required additional litigation. (Ex. J at 68, ¶ 390.)

Pennsylvania Constitution, article I, § 11 — open courts and remedies

Defendants against whom this cause of action is pleaded: Supreme Court of Pennsylvania; Seventeenth Judicial District of Pennsylvania; Administrative Office of Pennsylvania Courts; Commonwealth of Pennsylvania; Snyder County; Lori R. Hackenberg; Kylie Aikey.

260. Those defendants controlled filings, court records, legal representation, or access to an adjudicative remedy. (Ex. J at 69, ¶ 420.)

261. Those defendants prevented or delayed meaningful pursuit of Robbins's claims or appellate record. (Ex. J at 70, ¶ 424.)

262. Those defendants caused additional expense and loss of timely judicial review. (Ex. J at 70, ¶ 426.)

Pennsylvania Constitution, article I, § 26 — equal civil rights

Defendants against whom this cause of action is pleaded: Commonwealth of Pennsylvania; Supreme Court of Pennsylvania; Seventeenth Judicial District of Pennsylvania; Snyder County; Snyder County Children and Youth Services; Pennsylvania Department of Human Services; Administrative Office of Pennsylvania Courts; Russell W. Robbins; Gregory A. Stuck; Brian Ulmer; The Ridge RTC (Maine); Altior Healthcare, LLC.

263. Those defendants acted through governmental authority affecting Robbins's civil rights. (Ex. J at 73, ¶ 447.)

264. Those defendants treated Robbins differently from similarly situated litigants in custody, records, or access procedures. (Ex. J at 73, ¶ 451.)

265. Those defendants caused loss of custody-related opportunities, records, or remedies. (Ex. J at 73, ¶ 454.)

Pennsylvania Constitution, article I, § 28 — sex discrimination

Defendants against whom this cause of action is pleaded: Commonwealth of Pennsylvania; Supreme Court of Pennsylvania; Seventeenth Judicial District of Pennsylvania; Snyder County; Snyder County Children and Youth Services; Pennsylvania Department of Human Services.

266. Those defendants acted through governmental authority affecting parental rights and family proceedings. (Ex. J at 76, ¶ 475.)

267. Those defendants treated Robbins less favorably on the basis of sex in the implementation of those proceedings. (Ex. J at 76, ¶ 479.)

268. Those defendants caused custody-related loss, additional expenses, and denial of equal participation. (Ex. J at 77, ¶ 484.)

Pennsylvania Unfair Trade Practices and Consumer Protection Law — COAs 496–513

Defendants against whom this cause of action is pleaded: North Penn Legal Services, Inc.; Pennsylvania Legal Aid Network, Inc.; Legal Services Corporation; Transitions of PA; Transitions Legal Center; Pennsylvania Bar Association; Union–Snyder County Bar Association; American Bar Association; Bloomsburg Fair Association; International Legal Aid Group; Union County Criminal Justice Advisory Board; Union County Mental Health Advisory Committee; Union County STOP Coalition; Snyder County STOP Coalition; Bucknell University; National Conference of Bar Examiners; Clinton County Bar Association; Lycoming Law Association.

269. Those defendants offered, controlled, or represented the public-facing legal services, referrals, recognition, and access programs described in the individual UTPCPL assignments. (Ex. B at 7, ¶ 33.) (Ex. F at 2, ¶ 1171.)

270. Those defendants gave materially misleading eligibility, access, referral, availability, or program participation representations to Robbins, her representatives, or the public. (Ex. B at 8, ¶ 36.) (Ex. F at 8, ¶ 1188.)

271. Those defendants caused Robbins to continue pursuing services, representation, or opportunities in reliance on those communications or their concealment. (Ex. B at 9, ¶ 39.) (Ex. F at 9, ¶ 1191.)

272. Those defendants caused Robbins ascertainable loss through additional representation costs, delays, and expenditures to secure substitute services. (Ex. B at 9, ¶ 42.) (Ex. F at 4, ¶ 1176.)

Violence Against Women Act nondiscrimination — 34 U.S.C. § 12291(b)(13)

Defendants against whom this cause of action is pleaded: Commonwealth of Pennsylvania; Snyder County; Union County; Snyder County STOP Coalition; Union County STOP Coalition; Transitions of PA; Transitions Legal Center; Pennsylvania Department of Human Services; North Penn Legal Services, Inc.; Pennsylvania Legal Aid Network, Inc.; Legal Services Corporation.

273. Those defendants received or administered funds or programs subject to VAWA nondiscrimination duties. (Ex. J at 61, ¶ 330.)

274. Those defendants excluded or burdened Robbins or her legal representatives from the covered assistance because of protected status or protected advocacy. (Ex. J at 68, ¶ 390.)

275. Those defendants caused denied services, additional legal expense, or diminished access to support. (Ex. J at 68, ¶ 390.)

STOP Violence Against Women formula grant nondiscrimination — 34 U.S.C. § 10446

Defendants against whom this cause of action is pleaded: Commonwealth of Pennsylvania; Snyder County; Union County; Snyder County STOP Coalition; Union County STOP Coalition; Transitions of PA; Transitions Legal Center; Pennsylvania Department of Human Services; Pennsylvania Legal Aid Network, Inc.; North Penn Legal Services, Inc.

276. Those defendants operated or participated in the covered STOP grant program or its coordinated referral system. (Ex. J at 61, ¶ 330.)

277. Those defendants restricted access to services or referrals through the challenged nondiscrimination practices. (Ex. J at 68, ¶ 390.)

278. Those defendants caused Robbins reduced assistance and increased cost of securing relief. (Ex. J at 68, ¶ 390.)

Intentional interference with parental custody and custodial relations — Restatement (Second) of Torts § 700

Defendants against whom this cause of action is pleaded: Russell W. Robbins; The Ridge RTC (Maine); Gregory A. Stuck; Brian Ulmer; Kathleen Lincoln; Snyder County Children and Youth Services; Pennsylvania Department of Human Services; Seventeenth Judicial District of Pennsylvania; Northumberland County; Northumberland County Children and Youth Services; Altior Healthcare, LLC.

279. Those defendants knew that Robbins held parental custody, consent, and contact rights concerning her children. (Ex. J at 101, ¶ 660.)

280. Those defendants participated in arranging, continuing, or enforcing the interstate residential placement or blocked parental access without Robbins's consent. (Ex. J at 102, ¶ 663.)

281. Those defendants caused loss of parenting time, expenses, and family separation. (Ex. J at 102, ¶ 665.)

Maine unfair and deceptive trade practices — 5 M.R.S. §§ 207, 213; 10 M.R.S. §§ 1212–1213

Defendants against whom this cause of action is pleaded: The Ridge RTC (Maine); Altior Healthcare, LLC.

282. Those defendants offered or supplied the challenged residential-treatment or related services. (Ex. J at 85, ¶ 552.)

283. Those defendants used misleading representations or omissions concerning consent, custody authority, placement, or treatment services. (Ex. J at 86, ¶ 556.)

284. Those defendants caused ascertainable financial or service-related loss to Robbins. (Ex. J at 86, ¶ 561.)

Fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation

Defendants against whom this cause of action is pleaded: The Ridge RTC (Maine); Russell W. Robbins; Brian Ulmer; Gregory A. Stuck; Kathleen Lincoln; Snyder County Children and Youth Services; Altior Healthcare, LLC.

285. Those defendants made or concealed material statements concerning custody consent, placement authority, care, and parental access. (Ex. J at 89, ¶ 578.)

286. Those defendants knew the statements or omissions were misleading or failed to use due care in supplying them. (Ex. J at 89, ¶ 579.)

287. Those defendants caused Robbins or the decisionmaker to rely on the representations or concealments. (Ex. J at 90, ¶ 587.)

288. Those defendants caused placement-related losses, legal expense, and deprivation of contact. (Ex. J at 90, ¶ 587.)

**Medical battery and unauthorized psychiatric treatment**

Defendants against whom this cause of action is pleaded: The Ridge RTC (Maine); Russell W. Robbins; Snyder County Children and Youth Services; Pennsylvania Department of Human Services; Altior Healthcare, LLC.

289. Those defendants undertook or directed psychiatric care for a child while Robbins asserted parental consent and legal custody rights. (Ex. J at 96, ¶ 632.)

290. Those defendants authorized, arranged, or performed medical treatment without the consent or authority required for the circumstances. (Ex. J at 97, ¶ 639.)

291. Those defendants caused infringement of parental consent rights and the resulting injuries alleged. (Ex. J at 99, ¶ 645.)

False imprisonment and unlawful residential confinement

Defendants against whom this cause of action is pleaded: The Ridge RTC (Maine); Russell W. Robbins; Brian Ulmer; Gregory A. Stuck; Snyder County Children and Youth Services; Pennsylvania Department of Human Services; Seventeenth Judicial District of Pennsylvania; Altior Healthcare, LLC.

292. Those defendants arranged, assisted with, or maintained the challenged child's residential confinement. (Ex. J at 97, ¶ 639.)

293. Those defendants restricted liberty and parental access without the lawful custodial or treatment authorization Robbins alleges was required. (Ex. J at 98, ¶ 642.)

294. Those defendants caused separation, travel expense, and legal costs to obtain contact or release. (Ex. J at 99, ¶ 645.)

Fourteenth Amendment procedural and substantive due process — 42 U.S.C. § 1983

Defendants against whom this cause of action is pleaded: Seventeenth Judicial District of Pennsylvania; Supreme Court of Pennsylvania; Administrative Office of Pennsylvania Courts; Commonwealth of Pennsylvania; Snyder County; Snyder County Children and Youth Services; Pennsylvania Department of Human Services; Lori R. Hackenberg; Kylie Aikey; Kathleen Lincoln; Brian Ulmer; Gregory A. Stuck; Russell W. Robbins; The Ridge RTC (Maine); Northumberland County; Northumberland County Children and Youth Services; Altior Healthcare, LLC.

295. Those defendants acted under state authority affecting Robbins's parental custody, notice, hearing, and family-integrity rights. (Ex. J at 97, ¶ 636.)

296. Those defendants deprived Robbins of adequate notice, meaningful hearing, record access, or proportionate procedures before or during the challenged placement. (Ex. J at 97, ¶ 639.)

297. Those defendants caused loss of contact, inability to participate in decisions, and legal expense. (Ex. J at 98, ¶ 640.)

Fourth Amendment unreasonable seizure and detention — 42 U.S.C. § 1983

Defendants against whom this cause of action is pleaded: Russell W. Robbins; The Ridge RTC (Maine); Snyder County Children and Youth Services; Snyder County; Pennsylvania Department of Human Services; Seventeenth Judicial District of Pennsylvania; Brian Ulmer; Gregory A. Stuck; Northumberland County; Northumberland County Children and Youth Services; Altior Healthcare, LLC.

298. Those defendants participated in transferring or holding the child under challenged governmental or joint action. (Ex. J at 97, ¶ 638.)

299. Those defendants caused detention or continued restraint without the lawful authority or justification Robbins alleges was required. (Ex. J at 97, ¶ 639.)

300. Those defendants caused interference with parental custody, contact, and associated expenses. (Ex. J at 98, ¶ 640.)

Maine Civil Rights Act — 5 M.R.S. § 4682

Defendants against whom this cause of action is pleaded: The Ridge RTC (Maine); Russell W. Robbins; Brian Ulmer; Gregory A. Stuck; Altior Healthcare, LLC.

301. Those defendants knew of Robbins's asserted parental and civil rights under the Maine Civil Rights Act. (Ex. J at 97, ¶ 638.)

302. Those defendants participated in threats, restraint, or interference with the exercise of those rights in connection with the residential placement. (Ex. J at 97, ¶ 639.)

303. Those defendants caused separation, expenses, and loss of family contact. (Ex. J at 99, ¶ 645.)

Fourteenth Amendment equal protection — 42 U.S.C. § 1983

Defendants against whom this cause of action is pleaded: Seventeenth Judicial District of Pennsylvania; Supreme Court of Pennsylvania; Administrative Office of Pennsylvania Courts; Commonwealth of Pennsylvania; Snyder County; Snyder County Children and Youth Services; Pennsylvania Department of Human Services; Lori R. Hackenberg; Kylie Aikey; Kathleen Lincoln; Brian Ulmer; Gregory A. Stuck; Russell W. Robbins; The Ridge RTC (Maine); Northumberland County; Northumberland County Children and Youth Services; Altior Healthcare, LLC.

304. Those defendants acted through state offices or joint state conduct concerning Robbins's custody and treatment-related requests. (Ex. J at 73, ¶ 447.)

305. Those defendants subjected Robbins to restrictions not applied to similarly situated parents in contact, consent, records, or hearing opportunities. (Ex. J at 73, ¶ 451.)

306. Those defendants imposed that differential treatment intentionally and without an adequate lawful reason. (Ex. J at 74, ¶ 455.)

307. Those defendants caused additional costs and lost opportunities to participate in decisions about her children. (Ex. J at 74, ¶ 455.)

**Intentional infliction of emotional distress**

Defendants against whom this cause of action is pleaded: Russell W. Robbins; The Ridge RTC (Maine); Brian Ulmer; Gregory A. Stuck; Kathleen Lincoln; Snyder County Children and Youth Services; Seventeenth Judicial District of Pennsylvania; Lori R. Hackenberg; Kylie Aikey; Altior Healthcare, LLC.

308. Those defendants arranged or maintained the challenged removal and residential restrictions, or further obstructed parental contact. (Ex. J at 101, ¶ 661.)

309. Those defendants acted intentionally or recklessly with disregard for the substantial risk of severe distress to Robbins. (Ex. J at 102, ¶ 663.)

310. Those defendants caused serious distress from prolonged child separation and additional proceedings. (Ex. J at 102, ¶ 666.)

**Defamation and false light invasion of privacy**

Defendants against whom this cause of action is pleaded: Russell W. Robbins; Brian Ulmer; Gregory A. Stuck; Kathleen Lincoln; Snyder County Children and Youth Services; Seventeenth Judicial District of Pennsylvania.

311. Those defendants published or communicated adverse statements of fact about Robbins's parental fitness or conduct. (Ex. J at 105, ¶ 682.)

312. Those defendants knew the statements were false or failed to exercise required care before repeating them. (Ex. J at 106, ¶ 688.)

313. Those defendants caused injury to Robbins's reputation and family-law position. (Ex. J at 106, ¶ 690.)

Intrusion upon seclusion and unauthorized medical information disclosure — 22 M.R.S. § 1711-C

Defendants against whom this cause of action is pleaded: The Ridge RTC (Maine); Russell W. Robbins; Brian Ulmer; Snyder County Children and Youth Services; Pennsylvania Department of Human Services; Altior Healthcare, LLC.

314. Those defendants obtained or controlled private family communications or protected treatment information. (Ex. J at 105, ¶ 685.)

315. Those defendants accessed, used, withheld, or disclosed those communications or records without authorization. (Ex. J at 106, ¶ 686.)

316. Those defendants caused loss of privacy, reduced access to records, and resulting expense. (Ex. J at 106, ¶ 687.)

**Pennsylvania civil conspiracy — interstate child abduction, interference with parental custody, unlawful residential placement, and related civil wrongs**

Defendants against whom this cause of action is pleaded: Russell W. Robbins; The Ridge RTC (Maine); Gregory A. Stuck; Brian Ulmer; Kathleen Lincoln; Kylie Aikey; Lori R. Hackenberg; Seventeenth Judicial District of Pennsylvania; Snyder County; Snyder County Children and Youth Services; Pennsylvania Department of Human Services; Commonwealth of Pennsylvania; Administrative Office of Pennsylvania Courts; Supreme Court of Pennsylvania; Pennsylvania Bar Association; Union–Snyder County Bar Association; Office of Disciplinary Counsel; Disciplinary Board of the Supreme Court of Pennsylvania; Northumberland County; Northumberland County Children and Youth Services; Altior Healthcare, LLC.

317. Those defendants reached a common understanding to obstruct Robbins's lawful parental custody or contact. (Ex. J at 109, ¶ 706.)

318. Those defendants undertook or supported interstate placement and contact restrictions allegedly violating independent legal duties. (Ex. J at 110, ¶ 707.)

319. Those defendants arranged or continued the Maine placement, refused parental access, or took connected steps to prevent effective review. (Ex. J at 110, ¶ 708.)

320. Those defendants directed the concerted activity toward interfering with Robbins's protected parental and litigation rights. (Ex. J at 110, ¶ 710.)

321. Those defendants caused loss of parenting time, increased travel expense, and costs of litigation and record access. (Ex. J at 124, ¶ 782.)

**Pennsylvania civil conspiracy — COA 528B — Northumberland County**

322. Defendant NORTHUMBERLAND COUNTY knew of Robbins's asserted parental custody and contact rights when the disputed Maine placement and denial of contact occurred. (Ex. J at 40, ¶ 210; Ex. J at 61, ¶ 330.)

323. Defendant NORTHUMBERLAND COUNTY agreed with the alleged participants in the interstate custody interference to maintain restrictions on Robbins's access to her children. (Ex. J at 61, ¶ 330; Ex. J at 61, ¶ 331.)

324. Defendant NORTHUMBERLAND COUNTY participated through its officers or agents in the alleged interference with parental consent, records, treatment information, or court-ordered contact. (Ex. J at 61, ¶ 330; Ex. J at 106, ¶ 686.)

325. Defendant NORTHUMBERLAND COUNTY acted with the alleged purpose of interfering with Robbins's custody and parental-access rights. (Ex. J at 106, ¶ 686; Ex. J at 106, ¶ 688.)

326. Defendant NORTHUMBERLAND COUNTY caused Robbins lost parenting time, additional legal expense, and travel and records costs. (Ex. J at 124, ¶ 782.)

**Pennsylvania civil conspiracy — COA 528C — Northumberland County Children and Youth Services**

327. Defendant NORTHUMBERLAND COUNTY CHILDREN AND YOUTH SERVICES knew of Robbins's asserted parental custody and contact rights when the disputed Maine placement and denial of contact occurred. (Ex. J at 40, ¶ 210; Ex. J at 61, ¶ 330.)

328. Defendant NORTHUMBERLAND COUNTY CHILDREN AND YOUTH SERVICES agreed with the alleged participants in the interstate custody

interference to maintain restrictions on Robbins's access to her children. (Ex. J at 61, ¶ 330; Ex. J at 61, ¶ 331.)

329. Defendant NORTHUMBERLAND COUNTY CHILDREN AND YOUTH SERVICES participated through its officers or agents in the alleged interference with parental consent, records, treatment information, or court-ordered contact. (Ex. J at 61, ¶ 330; Ex. J at 106, ¶ 686.)

330. Defendant NORTHUMBERLAND COUNTY CHILDREN AND YOUTH SERVICES acted with the alleged purpose of interfering with Robbins's custody and parental-access rights. (Ex. J at 106, ¶ 686; Ex. J at 106, ¶ 688.)

331. Defendant NORTHUMBERLAND COUNTY CHILDREN AND YOUTH SERVICES caused Robbins lost parenting time, additional legal expense, and travel and records costs. (Ex. J at 124, ¶ 782.)

## VIII. PRAYER FOR RELIEF

332. Robbins requests a declaration that an element-sufficient complaint must be tested by the eighteenth-century demurrer standard rather than a requirement to plead evidentiary facts.

333. Robbins requests an injunction suspending fact-pleading requirements that deny access to juries on claims pleading each necessary element.

334. Robbins requests a jury trial on disputed facts, compensatory relief, and any statutory, punitive, or treble damages authorized for the pleaded causes.

335. Robbins requests the declaratory, injunctive, records, custody, representation, and other relief specified in the individual causes and Exhibits A–J.

336. Robbins requests certification of the proposed class, recoverable fees and costs, and preservation of records relevant to the pleaded claims.

337. Alternatively, Robbins requests leave to file the ten attached complaints separately and to sever any additional causes of action the Court determines should not be joined.

## IX. JURY DEMAND

338. Robbins demands trial by jury on all issues triable as of right under the Seventh Amendment and Federal Rule of Civil Procedure 38.

Respectfully submitted,

/s/ Paige Martineau

Paige Martineau, Esquire, Pa. I.D. No. 325096

Susquehanna Legal Aid for Adults and Youth

218 Pine Street, Williamsport, PA 17701

570-392-3025

paigemartineau@slaay.org

Counsel for Noreen S. Robbins and Proposed Class

Dated: October 31, 2026